IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| LEON MESSERLY,<br><br>        Plaintiff,<br><br>  vs.<br><br>CAROLYN W. COLVIN, Commissioner<br>of Social Security Administration,<br><br>        Defendant. | CV 15-98-GF-JTJ<br><br>**ORDER GRANTING<br>SUMMARY JUDGMENT IN<br>FAVOR OF DEFENDANT** |

## I.  SYNOPSIS

Leon Messerly seeks Supplemental Security Income ("SSI") disability benefits under the Social Security Act.  The Commissioner of Social Security ("Commissioner") determined that Mr. Messerly has no past relevant work and although Mr. Messerly has severe impairments, he can perform jobs that exist in significant numbers in the national economy and, therefore, is not disabled and not entitled to benefits.  The Commissioner's determination is supported by substantial evidence and is not based on legal error.  Therefore, Mr. Messerly's Motion for Summary Judgment will be denied, and judgment will be entered in the Commissioner's favor.

## II. JURISDICTION

The Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (2015). The parties consented to a United States Magistrate Judge conducting all proceedings in the case. Doc. 8. The Great Falls Division of the District of Montana is the proper venue because Mr. Messerly resident of Blaine County, Montana, when the action commenced. Doc. 1 at 2; 42 U.S.C. 405(g); Local Rule 1.2(c)(2).

## III. STANDARDS

### A.    Court's role

Review in this case is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Hum. Services*, 846 F.2d 573, 576 (9th Cir. 1988).

The district court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). The Court may reject the findings not

supported by the record, but it may not substitute its findings for those of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

**B.** **Disability criteria**

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months"; and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A)-(B)).

To determine whether a claimant is disabled for purposes of the Social Security Act, an Administrative Law Judge (ALJ) follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in

substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the ALJ automatically finds the claimant disabled. *Id*. If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

## IV.  BACKGROUND

### A.    Procedural history

Mr. Messerly applied for SSI benefits on June 9, 2012, and the Commissioner

denied his claim on November 5, 2012.  (Doc. 10 at 67-81.)  Mr. Messerly filed a request for reconsideration on November 8, 2012. (*Id.* at 99-100.)  The Commissioner denied Mr. Messerley's request on February 4, 2013.  (*Id.* at 82-95.)

Mr. Messerly timely filed a written request for a hearing before an ALJ on March 11, 2013.  (*Id.* at 104.)  On January 15, 2014, the ALJ held a hearing. (*Id.* at 31-66.)  Mr. Messerly was present at the hearing with counsel and testified.  (*Id.*)  On April 2, 2014, the ALJ rendered his decision denying Mr. Messerly's claim.  (*Id.* at 11-24.)

On May 28, 2014, Mr. Messerly timely requested a review of the ALJ's denial of his claim.  (*Id.* at 7.)  On September 8, 2015, the Appeals Council denied Mr. Messerly's request for review, making the ALJ's decision the Commissioner's final decision.  (*Id.* at 1-6.)

Mr. Messerly timely filed this action on November 9, 2015, seeking judicial review of the Commissioner's decision.  (Doc. 1.)  Mr. Messerly filed an opening brief requesting the Court of reverse or remand the Commissioner's decision.  (Doc. 12.)  The Commissioner filed a response brief requesting the Court to affirm the Commissioner's decision.  (Doc. 19.)  Mr. Messerly filed a reply brief.  (Doc. 24.) The motion is ripe for decision.

### B.    ALJ's determination

At step one, the ALJ determined that Mr. Messerly had not engaged in substantial gainful activity since June 26, 2012, the alleged onset date.  (Doc. 10 at 13.)   At step two, the ALJ found that Mr. Messerly has the following severe impairments: degenerative disc disease of the lumbar spine, right rotator cuff tear; a cognitive disorder, and an antisocial personality disorder.  (*Id*.)

At step three, the ALJ found that Mr. Messerly did not have an impairment or combination of impairments that met or were medically equal to one of the listed impairments.  (*Id*. at 15-18.)

At step four, the ALJ determined that Mr. Messerly had the residual functional capacity to perform light work with several limitations.  (*Id*. at 18-22.)  The ALJ also found that Mr. Messerly had no past relevant work.  (*Id*. at 21-22.)

At step five, the ALJ determined that Mr. Messerly was not disabled because he had the residual functional capacity to engage in substantial gainful activity in work that exists in significant numbers in the national economy as a marker, routing clerk, and cleaner/housekeeper.  (*Id*. at 22-23.)

### C.    Mr. Messerly's position

Mr. Messerly argues the ALJ's decision should be reversed or the case remanded because the decision is based on the following errors:

1.    The ALJ erred by not finding him disabled under Medical-Vocational Guidelines Rule 201.09.

2.    The ALJ erred by failing to fully consider his low intellectual functioning and obtain proper testing.

3.    The ALJ erred by failing to obtain the opinion of a medical psychological expert.

4.    The ALJ erred by failing to follow the regulations regarding medical improvement based on the agency's prior approval of his SSI disability benefits due to his cognitive disorder.

5.    The ALJ erred by finding his subjective complaints of pain and other symptoms were not credible without giving clear and convincing reasons which were supported by the evidence.

6.    The ALJ erred by using his daily activities to find his subjective complaints were not credible because the record showed his daily activities to be very limited and far less than the activity required for sustained work activity.

7.    The ALJ erred by using the opinion of the consulting physician who has been removed from the consulting lists and who did not have all the medical evidence.

8. The ALJ erred in assessing his residual functional capacity because it was not supported by the record.

9. The ALJ erred by finding he could perform the jobs listed by the vocational expert because those jobs required tasks that exceeded his residual functional capacity.

Doc. 12.

# V. ANALYSIS

The Court determines, after a review of the record, that the ALJ's decision is reasonably supported by substantial credible evidence and is free of legal error. The ALJ provided more than a mere scintilla of evidence, and the evidence is sufficient for a reasonable mind to accept it as adequate support for his conclusion. Therefore, the ALJ's decision is subject to reversal or remand only if it was based on legal error.

## A. Rule 201.14

### 1. Legal standards

Mr. Messerly argues he is disabled under the Medical-Vocational Guidelines Rule 201.14 set forth at 20 C.F.R. Part 404, Subpart P, App. 2. Under Rule 201.14 Mr. Messerly is disabled if he meets the following criteria: (1) he is limited to sedentary works; (2) he must be closely approaching advanced age; (3) he has an education of high school graduate or more–does not provide for direct entry into

skilled work; and (4) he has prior work experience of skilled or semiskilled–skills not transferable.

### 2. Analysis

The controlling issue is whether Mr. Messerly is able to perform light work as opposed to being limited to sedentary work. If he is, Mr. Messerly is not disabled under Rule 201.14. Mr. Messerly testified he cannot lift anything with his right arm. Tr. 52. Based upon this testimony Mr. Messerly argues that he is limited to sedentary work. Doc. 12, p. 4. Although the Commissioner makes no specific argument in relation to Rule 201.14, she does argue that the ALJ correctly determined that Mr. Messerly is capable of performing light work. Here, in determining that Mr. Messerly is capable of performing light work, the ALJ rejected Mr. Messerly's testimony that he cannot lift anything with his right arm. Tr. 20-21. As discussed in further detail in section E below, the ALJ provided specific, clear, and convincing reasons that were supported by substantial evidence for rejecting Mr. Messerly's testimony about the extent of his right arm limitations. Therefore, Mr. Messerly is not disabled under the Medical-Vocational Guidelines Rule 201.14

### B. Listing 12.05C

### 1. Legal Standards

The Social Security Regulations' "Listing of Impairments" generally describes

impairments that are so severe as to be considered presumptively disabling, without further consideration of a claimant's residual functioning capacity, past relevant work, or other jobs. 20 C.F.R. §§ 404.1520(d), 416.920(d). A diagnosis of a listed impairment is not sufficient; the claimant must also satisfy the findings shown in the listing of that impairment. *Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir.1990). A claimant has the burden to establish that he or she meets or equals the criteria for a listed impairment based on medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

To establish disability under Listing 12.05C, a claimant must satisfy the diagnostic criteria in the introductory paragraph as well as the criteria in paragraph C. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). Thus, a claimant must establish (1) significantly sub-average intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (before age 22); (2) a valid IQ score of 60 through 70; and (3) another mental or physical impairment imposing additional and significant limitation of function. 20 C.F.R. pt. 404, subpt. P., app. 1, listing 12.05C.

Mr. Messerly argues that based on his prior approval of SSI for a cognitive disorder, the ALJ should have obtained IQ testing to determine whether he met Listing 12.05C. The Commissioner argues that Mr. Messerly failed to meet Listing 12.05C

because even assuming he had a qualifying IQ he failed to prove that he had deficits in adaptive functioning during the developmental period and, in any event, he had only mild restrictions in daily living and good adaptive functioning that would preclude Mr. Messerly from meeting listing 12.05C.

### 2. Analysis

#### a. Initial Manifestation in the Developmental Period

A review of the record reveals that Mr. Messerly failed to satisfy that he had "deficits in adaptive functioning *initially manifested during the developmental period* (before age 22)." Although Mr. Messerly testified that eighth grade was the last year of school he completed he provided no testimony or other evidence linking his quitting school to his claimed deficits in adaptive functioning. Mr. Messerly also testified that he attempted to obtain a GED while in prison but was unable to do so because he could not pass the test but he provided no evidence that this attempt was before he turned 22 nor did he provide any testimony or evidence linking this failure to his claimed deficits in adaptive functioning. Because Mr. Messerly failed to meet his burden of proving that his claimed deficits in adaptive functioning initially manifested during the developmental period, the ALJ did not commit legal error in not obtaining IQ testing for Mr. Messerly.

Furthermore, the ALJ found Mr. Messerly had only mild restrictions in daily

living and good adaptive functioning because he walked, drove, read, fished, cared for himself, handled money, and has no difficulty handling his own finances. (Tr. 16.) The ALJ's findings are supported by substantial evidence and preclude a determination that Mr. Messerly meets listing 12.05C.

### b. Opinion of a Medical Psychological Expert

Mr. Messerly also argues that the ALJ erred in failing to obtain a medical expert's opinion to evaluate whether the limitations imposed by his mental impairments "may have met the medical equivalency of a Listing." (Doc 12, p 4.) The Commissioner argues that a medical expert is required only if in the opinion of the administrative law judge or the Appeals Council new evidence might change the outcome of a decision regarding whether Plaintiff equals a Listing and because Mr. Messerly failed to meet his burden of proving that his claimed deficits in adaptive functioning initially manifested in the developmental period the ALJ was not required to obtain the opinion of a medical expert. (Doc. , p. 4.) In reply, Mr. Messerly argues that "a medical expert could have rendered an opinion on whether the evidence satisfied this requirement." (Doc. 24, p. 10.)

Mr. Messerly failed to provide substantial evidence that his claimed deficits in adaptive functioning initially manifested themselves during the developmental period. The ALJ consulting a medical expert would not cure this deficit because Mr. Messerly

failed to provide evidence establishing when his claimed deficits were initially manifested. Therefore, the ALJ did not err in not obtaining the opinion of a medical psychological expert.

### C. Termination of Benefits After 12 Consecutive Months of Incarceration

#### 1. Legal Standards

The controlling issue is whether the ALJ is required to presume Mr. Messerly is disabled for purposes of his current application because he was previously determined to be disabled on a prior application. In rejecting the same argument Mr. Messerly advances here under very similar circumstances, the Ninth Circuit reasoned as follows:

> The current regulations state that a claimant's benefits are suspended upon incarceration, and after 12 months of continuous suspension, benefits are terminated. See 20 C.F.R. §§ 416.1325, 416.1335. While the regulations provide for the resumption of suspended benefits upon an otherwise eligible recipient's release from custody, see 20 C.F.R. § 416.1325(b), they provide for no such reinstatement where a recipient's eligibility has been terminated after 12 consecutive months of suspension. Accordingly, there is no basis for applying a presumption of continuing disability where, as here, a claimant's reapplication comes at least 6 years after a termination of benefits and more than 15 years after her previously successful application.

*Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1172 (9th Cir. 2008).

13

## 2. Analysis

Mr. Messerly received SSI benefits from September 2003 until December 2009 because of cognitive disorder. (Doc. 10 at 33.) Mr. Messerly was incarcerated from 2009 to 2012, and again from 2012 to 2013. (*Id.* at 11, 19, and 479.) Mr. Messerly's SSI benefits were termined after he was incarcerated. (*Id.* at 11.)

Mr. Messerly argues that because the ALJ did not determine that his cognitive condition that previously entitled him to benefits had medically improved, the ALJ erred in not awarding him benefits on his 2012 application. The Commissioner argues that because Mr. Messerly was incarcerated for more than 12 consecutive months, the ALJ was not required to determine that his cognitive condition had medically improved.

Like the claimant in *Stubbs-Danielson*, Mr. Messerly's benefits were terminated after he had been incarcerated for more than 12 months. Accordingly, there is no basis for applying a presumption of continuing disability to Mr. Messerly's 2012 application for SSI benefits, where, as her, his reapplication comes at least three years after termination of his benefits and at least 9 years after his previous successful application. Therefore, the ALJ was not required to presume that Mr. Messerly's disability was continuing from his prior application and was not required to determine his condition had medically improved from the time his prior application was approved in order to

deny his current application for benefits.

### D.  Adverse Credibility Determination

#### 1.  Legal Standard

An ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.' " *Orteza v. Shalala*, 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by providing "specific, clear, and convincing reasons" for rejecting a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). In evaluating the claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation." *Id.* For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, including whether the claimant's daily activities are inconsistent with the alleged symptoms, *Id.* (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)*; whether the claimant's treatment has been conservative, *Tommasetti v.* Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); and whether the claimant's testimony is consistent with the objective medical evidence, *Burch v. Barhhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). If the ALJ relies on such factors and his reliance is supported by substantial evidence, the Court "'may not engage in second-guessing.'" *Id.* (quoting *Thomas v. Bardnhart,* 278 F.3d 947, 958 (9th Cir. 2002)).

## 2. Analysis

Mr. Messerly testified that he cannot work because of his memory, right shoulder and back. The ALJ found Mr. Messerly to be partially credible in that he does have a cognitive disorder, antisocial personality disorder, a right rotator cuff tear

and degenerative disc disease in the lumbar spine that are limiting. (Doc. 10 at 20) However, the ALJ further found that Mr. Messerly was not credible to any extent that he alleges severe disabling memory, right shoulder and back problems that completely limit him from all work. (*Id.*)

The ALJ relied on the following reasons for rejecting Mr. Messerly's claim that his impairments preclude him from engaging in any work: (1) Mr. Messerly's activities of daily living were inconsistent with his alleged limitations; (2) Mr. Messerly's treatment of his right shoulder and back has only been conservative; (3) the objective evidence contradicted Mr. Messerly's statements concerning his symptoms and limitations. (*Id*. at 20-22.) As stated above, each of these reasons has been recognized as a specific, clear, and convincing reason for rejecting a claimant's testimony. Therefore, the remaining issue is whether these reasons are supported by substantial evidence.

### a.    Activities of daily living

In relation to Mr. Messerly's daily activities, the ALJ found that he managed his own finances, drove, walked, socialized in a group, cooked, shopped and did household chores. (*Id*. at 16 and 21.) The Court finds that these findings are supported by substantial evidence. Although these activities may not establish that Mr. Messerly could work on a sustained basis they are nevertheless relevant to Mr. Messerly's

17

credibility because they are inconsistent with his alleged limitations and justify the ALJ not finding him to be fully credible.

### b. Conservative treatment

In relation to Mr. Messerly's treatment being conservative, the ALJ found "all of the claimant's treatment to date has been solely conservative in nature for his back and right shoulder pain consisting of medications and occasional injections for pain and no hospitalizations or surgeries or even concerted outpatient treatment." (*Id.* at 20.) The Court finds that substantial evidence supports these findings. Mr. Messerly argues that he testified that Dr. Billings has recommended back and right shoulder surgery, but he offered no explanation as to why he did not undergo these surgeries despite Dr. Billings's recommendations. Mr. Messerly receiving conservative treatment is relevant to his credibility and justify the ALJ finding him to be not fully credible. It suggests he is suffering from less pain than he claims and has greater function than he claims. Otherwise he would be receiving more intensive medical care and treatment, such as surgeries recommended by his physician, in an attempt to decrease his claimed pain and/or improve his claimed diminished function.

### c. Objective evidence contradicting Mr. Messerly's statements

Finally, in relation to the objective evidence contradicting Mr. Messerly's

statements, the ALJ relied on the opinions of Mark Mozier, Ph.D., who opined that Mr. Messerly "is well capable of attending to the usual everyday activities of daily living" and that he "is capable of modestly paced, relatively repetitious, unskilled work activity, should he become interested." (*Id.* at 22 and 429) The Court finds that these findings are supported by substantial evidence. Dr. Mozier's opinions contradicting Mr. Messerly's statement that his memory prevents him from working is relevant to his credibility and justify the ALJ finding him to be not fully credible.

### 3. Conclusion

Based on the foregoing, the ALJ's negative credibility finding was a reasonable interpretation of the evidence. The ALJ set forth specific, clear, and convincing reasons supported by substantial evidence to explain his credibility evaluation pursuant to factors deemed appropriate by the Ninth Circuit. Consequently, the ALJ did not err in rejecting Mr. Messerly's testimony regarding the extent of his limitations.

### E. Dr. Doubek

#### 1. Legal Standrads

The ALJ is responsible for judging and resolving conflicts in the medical evidence. 20 C.F.R. § 416.927; *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "[T]he ALJ is the final arbiter with respect to resolving

ambiguities in the medical evidence. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). "When there is conflicting medical evidence, the [Commissioner] must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). So long as there is more than a scintilla of evidence to support the ALJ's interpretation of the evidence, and that interpretation is based on the correct legal standards, it should not be overturned. *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 690 (9th Cir. 2009).

### 2.    Analysis

Mr. Messerly argues that the ALJ erred in giving significant weight to Dr. Doubek's opinions because Dr. Doubek did not have the results of Mr. Messerly's arthrogram at the time he rendered his opinions and because the Montana Department of Health and Human discontinued using Dr. Doubek some time after he had examined Mr. Messerly.  (Doc. 12 at 16.)  The Commissioner argues that the ALJ is responsible for resolving conflicts in the evidence and that a claimant's alternate interpretation of the evidence is insufficient to justify overturning the Commissioner's decision.  (Doc.19 at 10.)

Although Dr. Doubek did not have Mr. Messerly's arthrogram results, he was able to examine Mr. Messerly and his examination revealed that his "upper extremities are quite strong and symmetric and his grips and ability to pinch are strong bilaterally

and there is no tremor or atrophy anywhere and all joints have full active range of motion." (Doc. 10 at 421.) There is no evidence that Dr. Doubek's findings on examination would have been any different had he reviewed the arthrogram results.

The ALJ further found that Dr. Doubek's findings are consistent with the findings of his own physician, Dr. Odegaard, who found Mr. Messerly's right shoulder has a full range of motion. (*Id.* at 21.) The ALJ also found that none of Mr. Messerly's treating sources described him as being disabled and none have imposed limitations upon him during the course of treatment because of his back or shoulder conditions. (*Id.*) It is also important to note that although Dr. Doubek did not have the arthrogram results, the ALJ was fully aware of its results in determining Mr. Messerly's residual functional capacity. (*Id.*)

In relation to Dr. Doubek no longer examining patients for the Montana DHHS, there is no evidence in the record that the examination he conducted of Mr. Messerly was not reasonably performed or that his findings on examination of Mr. Messerly were erroneous.

Certainly, Mr. Messerly's view of the evidence differs from that of the ALJ. However, the test is not whether a claimant can point to evidence in the record that supports his case. Rather, where evidence is susceptible to more than one rational

interpretation, it is the Commissioner's conclusion that must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Such is case here. The ALJ's interpretation of the evidence must therefore be upheld.

**F.     Residual Functional Capacity**

Mr. Messerly argues that the ALJ's finding regarding his residual functional capacity (RFC) at step four is erroneous because (1) his back and shoulder pain and his inability to reach repetitively would not allow him to engage in light work; and (2) the physical requirements for the jobs listed by the vocational expert exceed his RFC as determined by the ALJ.

**1.     Ability to Engage in Light Work**

In evaluating the evidence, the ALJ determined that Mr. Messerly could perform light work except he is limited from frequent stooping and frequent crouching; and he should not engage in repetitive reaching with the right upper extremity. In relation to Mr. Messerly's claim that the ALJ's RFC is erroneous because he cannot reach repetitively, the ALJ's RFC specifically provides that Mr. Messerly should not engage in repetitive reaching. Therefore, the ALJ's RFC is not erroneous in relation to reaching as Mr. Messerly argues.

In relation to back and shoulder pain, Mr. Messerly does not establish that the Commissioner's step four determination is incorrect by simply restating that the ALJ

improperly evaluated his impairments. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008). As discussed above, the ALJ did not error in finding Mr. Messerly to be not entirely credible and did not error in evaluating the medical evidence in evaluating his impairments and determining his resulting RFC.

### 2. Jobs Listed

The ALJ determined that given his RFC Mr. Messerly could work as a marker, a routing clerk, and a house cleaner. Mr. Messerly argues that he cannot use his right arm and because each of these jobs requires frequent reaching the ALJ erred in determining that he could perform these jobs.

An ALJ may properly rely on the vocational expert's answer when the "hypothetical that the ALJ posed to the[vocational expert] contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005). Here, the ALJ rejected Mr. Messerly's claim that he could not use his right arm at all, but instead determined that he was restricted to light work with no repetitive reaching with his right arm. As discussed above, the ALJ's did not error in making this determination.

The vocational expert testified that in her opinion Mr. Messerly could work as a marker, routing clerk and house cleaner because these jobs only require frequent reaching as opposed to repetitive reaching. (Doc. 10 at 61-62.) The ALJ therefore did

not error in determining that Mr. Messerly could work as a marker, a routing clerk, and a house cleaner.

IT IS HEREBY ORDERED that:

1.    The ALJ's determination is supported by substantial evidence.

2.    The ALJ's determination is not based on legal error.

3.    Mr. Messerly's Motion for Summary Judgment (Doc. 12) is **DENIED**.

4.    The Clerk of Court should be directed to enter judgment in favor of CAROLYN W. COLVIN, Acting Commissioner of Social Security.

DATED this 19th day of September, 2016.


John Johnston
United States Magistrate Judge